J-S93001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.A., MINOR CHILD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.D.A., MOTHER | No. 2571 EDA 2016 |

Appeal from the Order entered July 13, 2016,
in the Court of Common Pleas of Wayne County,
Civil Division, at No(s): No. 3-AD-2016.

BEFORE: DUBOW, SOLANO AND PLATT,[*] JJ.

MEMORANDUM BY DUBOW, J.:                    **FILED January 12, 2017**

Appellant, K.D.A. ("Mother"), appeals from the Order involuntarily terminating her parental rights to A.A. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).  We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Child was born in November 2009 to Mother and M.S. ("Father").  On January 14, 2014, the Wayne County Children and Youth Services ("the Agency" or "CYS") filed an Application for Emergency Protective Custody after Child was found in the physical custody of an inappropriate caretaker and Mother could not be located.  When Mother was eventually located, she

_____

[*] Retired Senior Judge Assigned to the Superior Court.

tested positive for illegal substances. Father was not part of the Child's life at that point. The trial court granted the Petition, and placed Child in foster care.

On February 19, 2014, the court adjudicated Child dependent, and awarded legal and physical custody to the Agency for placement in foster care. The Agency initially established reunification as the Child's permanency goal. The court held permanency review hearings regularly throughout the rest of 2014 and into early 2015. During that period, CYS worked with Mother to assist her with her drug problem, find suitable housing, and obtain steady employment. At the conclusion of each hearing, the trial court found that Mother made little or no progress towards meeting her permanency plan goals.

After the Child had been in placement for a year, in February 2015, the Agency petitioned the trial court to change Child's permanency goals to adoption and then to proceed to terminate the parental rights of both Mother and Father. At that time, however, the trial court acknowledged Father's new found interest in Child, and directed the Agency to pursue efforts to reunify Child and Father.

The Agency continued to provide assistance for Mother. Mother, however, made minimal effort to visit with the Child and continued to make minimal progress towards meeting her permanency goals. In particular, she tested positive on urine screens in May 2015, and failed to obtain housing or employment.

Since the Mother was making minimal effort to visit with the Child or meet her permanency objectives, on July 27, 2015, the trial court suspended Mother's visitation with Child. The suspension of the Mother's visits with the Child also permitted the Child to work through issues pertaining to his relationship with Father.

By late 2015, however, efforts to reunite Child with Father proved unsuccessful. In a fifth Revised Permanency plan dated December 11, 2015, Mother's goals were to remain clean and sober, to prepare for Child to return to her care, and to make sure Child maintained good health and consistent care while in her custody. The Agency's main concerns regarding Mother at this time were her continued substance abuse, her establishment of a residency, and obtaining steady employment.

On February 24, 2016, the Agency filed another Goal Change Petition requesting that the trial court change the permanency goal from reunification to adoption. Following an evidentiary hearing held on February 23, 2016, the trial court, in an Order dated the next day and filed on March 7, 2016, granted the Agency's Goal Change Petition and changed the goal to adoption. Mother timely appealed.[1]

---

[1] On December 1, 2016, this Court affirmed the trial court's order changing the goal to adoption. ***See In the Interest of: A.A., A Minor***, 1006 EDA 2016 (Pa. Super. filed Dec. 1, 2016), 2016 Pa. Super. Unpub. LEXIS 4376.

On March 22, 2016, the Agency filed a Petition for Involuntary Termination of Parental Rights ("TPR Petition") pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). The trial court held an evidentiary hearing regarding the Agency's TPR Petition on May 23, 2016. The Agency presented the testimony of a supervisor with knowledge of the case, and Mother testified on her own behalf. In addition, both parties introduced exhibits to support their positions. At the close of this hearing, the trial court took the matter under advisement. By Order and Decree entered July 13, 2016, the trial court terminated Mother's parental rights pursuant to Section 2511 (a)(1), (2), (5) and (8), and (b) of the Adoption Act.[2] Mother timely appealed.

**ISSUES ON APPEAL**

Mother raises the following issues on appeal:

1. Whether the Trial Court below erred as a matter of law and/or abused its discretion in Terminating [Mother's] Parental Rights[?]

2. Whether the Trial Court below erred as a matter of law and/or abused its discretion in Terminating [Mother's] Parental Rights after first having suspended [her] visitation with [Child] a year earlier?

Mother's Brief at 4. We will address Mother's claims together.

---

[2] The court continued the termination proceedings against Father due to the court's uncertainty as to whether he had received appropriate notice.

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with the trial court's decision under any one subsection of Section 2511(a). *See In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We

have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (citations omitted).

**Termination Pursuant to 2511(a)(1)**

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

> a)   The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

- 6 -

This Court has defined "parental duties" in general as the obligation to provide safety, security and stability for the child affirmatively and consistently:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*Id.*

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental

responsibilities while others provide the child with her physical and emotional needs." **Id.**

In the instant case, the trial court properly concluded that the Agency met the requirements of Section 2511(a)(1). The court found that, in the relevant period prior to the Agency's filing of the TPR Petition on March 22, 2016, Child had remained in placement, and Mother had failed to meet her established goals. In fact, the trial court found that, at times, Mother's whereabouts were unknown:

> This Court finds that Mother evidenced a settled purpose of relinquishing her parental rights. Furthermore, Mother evidenced a failure or refusal to perform parental duties for the six month period preceding the filing of the [TPR Petition].
>
> As a result of this Court's July 27, 2015, order that suspended Mother's visits, Mother has not seen [Child] since that date. However, lack of visitation alone is not dispositive.
>
> In the case at bar, Mother's visits were suspended more than 18 months after [Child] entered placement. Pursuant to the February 26, 2016, permanency review order, Mother showed minimal compliance. Mother provided intermittent AA/NA meeting attendance and refused a random urine screen for drugs on 11/13/15. Mother failed to provide [the Agency] with her residence. Furthermore, when [the Agency] created a plan to help Mother become clean and sober Mother made no effort to comply with the plan. As a result, Mother has made it difficult for [the Agency] to contact her because she had made her whereabouts unknown to them.
>
> ***
>
> Here, Mother failed to perform parental duties and evidenced a settled purpose to relinquish her parental rights. Mother's explanation for the conduct that gave rise

- 8 -

to [Child's] placement was that she was in "active addiction", she was "irresponsible", and she "did not put her son first in her life". These explanations do not justify her inability to perform parental duties. [Child] identified [the foster parents] as "Mom and Dad". Prior to her visits being suspended, Mother's interactions were observed as being "one-sided". When Mother initiated the "hugs and kisses" [Child] was reluctant to reciprocate. [Child] is enrolled in RD Wilson School and is thriving, pursuant to the February 24, 2016 Permanency Review Order. Therefore, Mother established a failure to perform parental duties.

On the other hand, [the Agency] has cared for [Child] since January 17, 2014. According to [an employee of the Agency], it would be detrimental to remove him from [the foster parents'] care. Not only does [Child] consider [the foster parents] his "mom" and "dad," but he also does not initiate interactions with Mother.

Therefore based on the aforementioned reasons, [the Agency] has established grounds for termination under section 2511(a)(1) by clear and convincing evidence that Mother refused or failed to perform her parental duties.

Trial Court's Opinion, 7/13/16, at 6-7.

Mother argues that the termination of her parental rights is not supported by the evidence because the Agency failed to meet its burden under Section 2511(a)(1). She asserts that the trial court erred in terminating her parental rights to Child "after having previously barred [her] from contact with [Child]," and "despite [her] slow and cumbersome – but progressive – steps to reconnect with [Child]." Mother's Brief at 9. According to Mother, "since the spring of 2015, she had completed a drug and alcohol inpatient program and was hoping to rekindle her relationship with [Child]. However, the Trial Court entered the visitation suspension Order." *Id.* at 20.

Our review of the record refutes Mother's claims. As noted by the trial court, *supra*, Mother's inability to visit with Child after the trial court suspended her visits did not interfere with her permanency objectives of remaining sober and obtaining housing and employment. Although Mother testified that she had recently made great strides in overcoming her addictions, she provided minimal evidence of her completion of any of her permanency plan goals. It was for the trial court to determine, as a matter of credibility, the weight to be given Mother's assertions. *In re M.G.*, *supra*.

Moreover, when the trial court gave the Mother the opportunity to visit with the Child, the Mother only visited sporadically. Consequently, Mother's argument that the suspension of the visits interfered with her ability to meet her objectives is disingenuous.

Finally, we note that the trial court was not to consider Mother's efforts made after the TPR petition was filed when considering termination under 23 Pa.C.S. § 2511(a)(1). *See* 23 Pa.C.S. § 2511(b) (providing that "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the [TPR Petition]."

Accordingly, the court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1).

**Termination Pursuant to Section 2511(b)**

We also agree with the Orphans' Court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of the Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." ***In re: Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

In ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the Orphans' Court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id.***

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. ***Id.*** at 763.

In the instant case, the trial court found that Mother's sporadic visits with the Child were "one-sided" in that Child seldom initiated affection with her. Thus, the court found that little or no bond exists between them. In

addition, the Agency submitted a letter "signed" by Child in which he stated his desire to remain with his foster parents. Accordingly, the court found that termination of Mother's parental rights would not have a negative impact on Child, and that a healthy bond existed between Child and the foster parents:

> Based upon the evidence and testimony presented, this Court finds that it is in the best interest of [Child] to terminate the parental rights of Mother. In regards to Mother, her housing, employment, and income are unknown to this Court and [the Agency]. What is known is that Mother has been nearly absent in [Child's] life for the past two (2) years. The parent-child bond between Mother and [Child] is almost non-existent. [Child] responded to an inquiry from [the Agency's employee] by saying, in reference to foster mother and father, "I want to stay here with mom and dad." Furthermore, [Child] has bonded with [foster parent's] children. [Child] is six (6) years of age and [Mother] has been absent in excess of two (2) of those years. Furthermore, Mother only vaguely evidenced a willingness to comply with the permanency plan after Father had established paternity and showed [an] interest in reuniting with [Child]. Therefore, any attempts Mother made to comply with the permanency plan were futile and only initiated due to Father arriving on the scene.
>
> Since [Child] moved in with [the foster parents] on January 17, 2014, he has been loved and provided for by [them]. This period in [Child's] life is the only period of stability [Child] has ever had. [Child] deserves to grow up in a home with stability with parents on whom he can depend.

Trial Court's Opinion, 7/13/16, at 12.

Mother argues that, "[e]xcept for a 'letter' from [Child] the record lacks any" finding that termination is in Child's best interest, "especially after

[her] contact with [Child] was terminated almost a year prior to termination." Mother's Brief at 27. According to Mother, "there is no testimony of any bond between [Child] and his foster parents or the lack of a bond with Mother." Mother's Brief at 28.

Our review of the record refutes Mother's assertions. Although given the opportunity, Mother presented no testimony regarding the strength of her bond with Child. Rather, Mother testified only that she loves Child, and that she was never given the opportunity to be a parent. N.T., 5/23/16, at 80-81. To the extent Mother implies that the trial court Order suspending her visits with Child vitiated her parenting "opportunity," we note that the record establishes that, even prior to the entry of the 2015 Order, Mother's visits with child were not consistent. *See id.*, at 24 (Mother completed only 38 of 74 scheduled visits between July 2014 and July 2015). Moreover, the Agency's employee testified that, in her opinion, little or no bond existed between them. Finally, although neither foster parent personally testified as to a bond with Child, the Agency's employee's testimony regarding its existence was a matter of credibility for the trial court. *In re M.G.*, *supra*.

**CONCLUSION**

In sum, our review of the record supports the trial court's conclusion that the Agency met its statutory burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). Accordingly, we affirm.

Order affirmed.

J-S93001-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/12/2017